585 F.Supp. 580 (1984)
SUN WORLD LINES, LTD., et al., Plaintiffs,
v.
MARCH SHIPPING CORPORATION, et al., Defendants.
No. 83-2606C(1).
United States District Court, E.D. Missouri, E.D.
May 22, 1984.
*581 Murry A. Marks, Clayton, Mo., for plaintiffs.
Mark L. Zaiger and Patrick M. Roby, Cedar Rapids, Iowa, Richard Alan Cooper and Daniel G. Tobben, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, Chief Judge.
This case is now before this Court on defendants March Shipping Corporation and March Shipping Passenger Services' (hereinafter "March Shipping" and "Passenger Services," respectively) motion to dismiss for lack of in personam jurisdiction. These defendants argue that they are not subject to service of process pursuant to Missouri's long-arm statute and that this Court's exercise of personal jurisdiction over them does not comport with the requirements of due process.
Plaintiffs Sun World Lines, Ltd. (hereinafter "Sun World") and Double Cee Investments, Ltd. (hereinafter "Double Cee") are Iowa corporations having their principal place of business in St. Louis, Missouri. Defendant Peter Deilmann (hereinafter "Deilmann") is a resident and citizen of the Federal Republic of Germany and has not joined in the instant motion to dismiss.[1] March Shipping is a New York corporation with its principal office in New York and Passenger Services is a wholly owned subsidiary corporation of March Shipping and also has its principal office in New York.
Plaintiffs' causes of action arise out of their dealings with defendants which were in furtherance of plaintiffs' desire to operate the luxury cruise ship M.V. "REGINA MARIS" (hereinafter "Regina Maris") in the North American market. Count I alleges that Deilmann, March Shipping and Passenger Services breached contracts they had with plaintiffs. Count II alleges that March Shipping and Passenger Services made fraudulent misrepresentations to plaintiffs which caused them various injuries. Count III charges March Shipping and Passenger Services with intentional interference with plaintiffs' contract with Deilmann.
In passing on a motion to dismiss for lack of jurisdiction over a non-resident, a federal diversity court is required to engage in a two-step inquiry: first, whether *582 defendant committed one of the acts enumerated in the long-arm statute; and second, whether the exercise of personal jurisdiction over defendant violates the due process clause of the fourteenth amendment. The Land-O-Nod Company v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. National Railway Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982). Plaintiff, the party that is seeking to invoke federal jurisdiction, has the burden of establishing that jurisdiction exists, and this burden may not be shifted to the party challenging the jurisdiction. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 (8th Cir. 1982). While the facts are viewed in the light most favorable to the plaintiffs, "there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist...." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir.1977) (citations omitted). See also Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir.1977) (plaintiff need only make a prima facie showing of jurisdictional facts through submission of affidavits plus discovery materials); 4 Wright & Miller, Federal Practice and Procedure: Civil § 1068 at 250 (1969).
Missouri's Long-Arm statute provides:
1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:
(1) The transaction of any business within this state;
(2) The making of any contract within this state;
(3) The commission of a tortious act within this state;
(4) The ownership, use, or possession of any real estate situated in this state;
(5) The contracting to insure any person, property or risk located within this state at the time of contracting.
2. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.
§ 506.500, R.S.Mo. (1982).
The due process clause of the fourteenth amendment places limits upon the power of a court to exercise personal jurisdiction over a non-resident defendant. The due process clause requires that a defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); Land-O-Nod, 708 F.2d at 1340. Accord World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Kulko v. California Superior Court, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). "In judging minimum contacts, a court properly focuses on `the relationship among the defendant, the forum, and the litigation.'" Calder v. Jones, ___ U.S. ___, at ___, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984) (citations omitted). See also Helicopteros Nacionales de Colombia S.A. v. Hall, ___ U.S. ___, at ___ - ___, 104 S.Ct. 1868, at 1872, 80 L.Ed.2d 404 (1984). The defendant's contacts with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there." World Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567. See also Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).
In this circuit, the due process standard has devolved into a consideration of five factors:
(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum *583 state in providing a forum for its residents; and (5) the convenience of the parties.
Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977). See Land-O-Nod, 708 F.2d at 1340. The first three factors are of primary importance and the last two are of secondary importance. Land-O-Nod, at 1340.
March Shipping and Passenger Services argue that personal jurisdiction is not proper as to them because they have not committed any one of the acts that would subject them to the long-arm jurisdiction of Missouri courts and because this Court's exercise of in personam jurisdiction over them does not comport with due process. Plaintiffs respond to the long-arm statute argument by stating that March Shipping and Passenger Services committed a tortious act within the State of Missouri. Plaintiffs answer the due process argument by relying on the Supreme Court's recent decision in Calder v. Jones, ___ U.S. ___, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). A brief overview of the facts underlying plaintiffs' claims is necessary.
The Regina Maris is owned and operated by Deilmann. Plaintiffs entered into a contract with Deilmann calling for plaintiffs to market cruises on the ship.[2] Plaintiffs' representatives met with representatives of March Shipping and Passenger Services in New York City and discussed the possibility of March Shipping and Passenger Services acting as general agent of plaintiffs for cruises on the St. Lawrence River. There was a telephone call between the parties, from St. Louis to New York City, on April 2, 1982, and on April 7, 1982, March Shipping sent a letter to plaintiffs reviewing their discussions in New York City and over the phone. The final written contract was prepared in New York and was executed in New York on April 8, 1982. There were subsequent meetings between the parties, but none of them took place in Missouri. No part of performance of the contract took place in Missouri. Moreover, movants stated that they have never: 1) been licensed, qualified or authorized to do business in Missouri; 2) paid any taxes to Missouri; 3) had any agent or employee in Missouri; 4) had any bank account in Missouri; 5) owned any real estate or any other property in Missouri; or 6) transacted any business in Missouri. Also, movants' transfer of funds to plaintiffs, pursuant to the contract, was made to plaintiffs' account in Iowa, not Missouri. Plaintiffs do not contest any of these facts.
Two (2) incidents occurred subsequent to the agreements entered into by the parties and these incidents form the primary basis of plaintiffs' claims against movants. On or about June 26, 1982, while on a St. Lawrence River cruise, the Regina Maris was raided by the Quebec Provincial Police because the Regina Maris did not have the proper permits and licenses to conduct gambling on the ship. The police seized the ship, arrested plaintiffs' employees, and seized plaintiffs' gambling equipment and funds. The second incident was that movants allegedly entered into a contract with Deilmann to charter the Regina Maris.
The first incident is the basis of plaintiffs' breach of contract and fraud claims against movants in Counts I and II. Plaintiffs allege that movants contracted to obtain the necessary permits before allowing gambling on the Regina Maris. Plaintiffs also allege that movants fraudulently misrepresented that they had the necessary permits. The second incident is the basis of plaintiffs' intentional interference with contract claim against movants in Count III. Plaintiffs allege that by entering into the charter agreement with Deilmann movants caused Deilmann to breach his contract with plaintiffs and said breach caused plaintiffs' business to suffer.
Plaintiffs argue that movants are subject to the long-arm jurisdiction of Missouri courts because the tortious act component of § 506.500 applies to tortious acts that *584 occur outside of Missouri if said acts have tortious consequences in Missouri. Here, the allegedly tortious acts of movants occurred outside of Missouri. Movants made the allegedly false representations outside Missouri and the conduct which is alleged to be intentional interference with a contract occurred outside Missouri. The tortious consequences in Missouri, according to plaintiffs' complaint, consist of their monetary injuries. Specifically, plaintiffs allege that as a result of movants' conduct, plaintiffs' credit worthiness has been damaged; plaintiffs' officers, directors and stockholders have been sued and plaintiffs have had to expend funds for their defense; plaintiffs' physical assets have been depleted; and plaintiffs have been sued by creditors and defaulted on loans from said creditors.
The tortious act component of § 506.500 has been interpreted to apply to extra-territorial acts that have consequences in the forum. See State ex rel. Deere and Company v. Pinnell, 454 S.W.2d 889 (Mo. banc 1970); State ex rel. Apco Oil Corporation v. Turpin, 490 S.W.2d 400 (Mo.App.1973). This interpretation is consistent with Missouri courts' broad interpretation of § 506.500 to extend jurisdiction of Missouri courts over non-resident defendants to the extent permissible under the due process clause. State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. banc 1982). In Pfeiffer v. International Academy of Biomagnetic Medicine, 521 F.Supp. 1331 (W.D.Mo.1981), the Court stated the applicable rule, as follows:
a non-resident defendant "commits a tortious act within the state" [consistent with § 506.500 and due process] when, through wholly extraterritorial acts it sets in motion a course of action deliberately designed to move into the forum state in order to injure plaintiff's business.
Id. at 1336 (citations omitted).
Applying this principle to the allegations of plaintiffs herein, it is the opinion of this Court that movants are subject to the long-arm jurisdiction of Missouri courts. Counts II and III allege intentional tortious conduct on the part of movants which has caused actionable consequences in Missouri to Missouri residents. It can be inferred from the conduct complained of in Counts II and III, as well as plaintiffs' request for punitive damages, that movants allegedly set in motion a course of action which movants intended to move into Missouri in order to harm plaintiffs' business.
It is also the opinion of this Court that due process is not violated by exercising in personam jurisdiction over movants with respect to Counts II and III. In Calder v. Jones, ___ U.S. ___, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court held that two (2) Florida residents, who wrote an allegedly libelous article which damaged plaintiff in California, were subject to the jurisdiction of California courts. The Court relied on the fact that defendants knew the article would injure plaintiff in California and the tort alleged was intentional rather than "mere untargeted negligence." Slip op. at 6-7. Similarly, in the case at bar, movants knew that their conduct would harm plaintiffs' business in Missouri and they are charged with intentional misconduct. The nature and quality of this contact with Missouri satisfied due process standards. See Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1267 (5th Cir.1981); Premix, Inc. v. Zappitelli, 561 F.Supp. 269, 274 (N.D.Ohio 1983). Moreover, although a single tortious act is sufficient to support personal jurisdiction, see Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., 587 F.Supp. 1105 at 1111 (1983), here movants are charged with two (2) separate instances of tortious conduct. Therefore, March Shipping and Passenger Services' motion to dismiss must be denied as to Counts II and III.
Count I, of course, is a contract action and personal jurisdiction must be valid as to each and every cause of action in a complaint. S.L. Kaye Co., Inc. v. Dulces Anahuac, S.A., 524 F.Supp. 17 (S.D.N.Y.1981); R.F.D. Group Limited v. *585 Rubber Fabricators, Inc., 323 F.Supp. 521 (S.D.N.Y.1971). Those causes of action which do not provide a sufficient basis for in personam jurisdiction must be dismissed even if other claims have such a basis. S.L. Kaye Co., Inc., 524 F.Supp. at 20; R.F.D. Group Limited, 323 F.Supp. at 524-27. This result is most likely to occur where, as here, a contract claim is joined with a tort claim, because the minimum contacts needed for a contract claim are often not the same as those needed for a tort claim. See Institutional Food Marketing Associates, Ltd. v. Golden State Strawberries, Inc., 587 F.Supp. 1105, 1110 (E.D.Mo.1983).
In the case at bar, however, this Court is convinced that personal jurisdiction is also appropriate as to Count I, even though movants' contacts with Missouri might not be sufficient for them to be subject to Count I alone in Missouri. Plaintiffs' breach of contract claim is based on the same core facts as the fraud claim and requiring plaintiffs to bring the contract claim in another forum would result in unnecessary duplicative litigation and waste of judicial resources. This result is inconsistent with the federal rule of judicial economy. See C. Wright, A. Miller and M. Kane, Federal Practice & Procedure: Civil § 1069 at 85 n. 82 (1983 Suppl.). Moreover, movants will not suffer from any unfairness in defending against the contract claim in Missouri, because it already has to defend the tort claims here. Accordingly, movants' motion to dismiss is also denied as to Count I.
NOTES
[1] On the face of the complaint personal jurisdiction over Deilmann appears to be valid because plaintiffs allege that Deilmann signed a contract with plaintiffs in St. Louis, Missouri.
[2] Plaintiffs' sole claim against Deilmann is for breach of Deilmann's contractual promises that the Regina Maris was seaworthy and that the casino on board the ship would not be opened prior to determining that it was legal to operate said casino.